1   Deborah E. Greaves (Bar No. 186454)
2   dgreaves@brutzkusgubner.com
    Joseph M. Rothberg (Bar No. 286363)
3   jrothberg@brutzkusgubner.com
4   Brutzkus Gubner
    21650 Oxnard Street, Suite 500
5   Woodland Hills, CA 91367
6   Telephone: (818) 827-9000
    Facsimile:  (818) 827-9099
7
8   Michael Lee (*Pro hac vice* pending)
    mlee@morrisonlee.com
9   Morrison & Lee LLP
10  1745 Broadway, 17th Floor
    New York, NY 10106
11  Telephone: (212) 858-9596
12  Facsimile:  (212) 858-9596
13
    Attorneys for Plaintiffs JACOB DANIEL FLEET
14  and JACOB TYLER ARTHUR SPATZ d/b/a "THE BIBLE RELOADED"

15              **UNITED STATES DISTRICT COURT**
16
                **CENTRAL DISTRICT OF CALIFORNIA**
17

| | |
|---|---|
| 18  JACOB DANIEL FLEET and JACOB TYLER ARTHUR SPATZ d/b/a "THE BIBLE RELOADED", | **CASE NO.**  8:16-cv-01830 |
| 19 | |
| 20 | **COMPLAINT FOR:** |
| 21                        Plaintiffs, | **(1) DMCA MISREPRESENTATION (17 U.S.C. § 512(f));** |
| 22         v. | |
| 23  CHRISTIANO FILM GROUP, INC. d/b/a FIVE & TWO PICTURES, | **(2) UNFAIR COMPETITION (Cal. Bus. & Prof. Code § 17200);** |
| 24  JEREMY RIZAL SELVANAYAGAM, and DOES 1- 10, | |
| 25 | **(3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS (COMMON LAW)** |
| 26                        Defendants. | |
| 27 | |
| 28 | **DEMAND FOR JURY TRIAL** |

4462.001
1646263_2

Plaintiffs JACOB DANIEL FLEET and JACOB TYLER ARTHUR SPATZ d/b/a "THE BIBLE RELOADED" (hereinafter collectively referred to as "Plaintiffs") by and through their attorneys of record, complaining of Defendants CHRISTIANO FILM GROUP, INC. d/b/a FIVE & TWO PICTURES and JEREMY RIZAL SELVANAYAGAM and Does 1 – 10 (hereinafter collectively referred to as "Defendants") hereby allege as follows:

## STATEMENT OF THE CASE

1.     Plaintiffs are the well-known creators and co-hosts of a video series, "The Bible Reloaded," that provides comedic commentary and criticism about religious-themed content, including films and literature, to an online audience on the **www.YouTube.com** website ("YouTube"). Plaintiffs use their channel not as a forum to politicize or preach their beliefs, but merely to provide entrainment to their viewers.

2.     In response to certain videos published by Plaintiffs, including videos that merely discuss factual matters as described herein, Defendants wrongfully used the takedown provisions of the Digital Millennium Copyright Act in a knowing and willful attempt to thwart Plaintiff's right to free speech under the First Amendment. This case arises as a result of Defendants' unlawful takedowns made to stifle public discussion and criticism of Defendant Christiano Film Group, Inc.'s films. Defendants' frivolous accusations are flagrant abuses of the law and directly caused YouTube, LLC to remove content from Plaintiffs' platforms to Plaintiffs' severe detriment. This wrongful conduct caused irreparable harm to Plaintiffs' reputation and standing with YouTube, LLC, other potential business partners, and with the public at large.

## PARTIES

3.     Plaintiff Jacob Daniel Fleet ("Jake") is an individual residing in Boise, Idaho. Jake is one of the co-founders and cohosts of an on-going comedy series entitled "The Bible Reloaded" that can be seen on YouTube.

4.     Plaintiff Jacob Tyler Arthur Spatz ("Hugo") is an individual residing in

**COMPLAINT**

Saginaw, Michigan. Hugo is the other co-founder and cohost of "The Bible Reloaded."

5.     Upon information and belief, Christiano Film Group, Inc. d/b/a Five & Two Pictures ("CFG") is a corporation organized under the laws of the State of California with its principal place of business at 46 Monserrat Place, Foothill Ranch, California 92610, United States.

6.     Upon information and belief, Jeremy Rizal Selvanayagam ("Selvanayagam") is an employee of CFG and has the title "Social Media Representative."

7.     Plaintiffs are ignorant of the true names of capacities of the Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names.  Plaintiffs will seek to amend this Complaint to allege such names and capacities as soon as they are ascertained.  Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously-named defendants is in some manner responsible, liable and/or obligated to Plaintiffs in connection with the acts alleged herein.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over the federal claims pursuant to the Copyright Act (17 U.S.C. §§ 101 et seq.), 28 U.S.C. §§ 1331 and 1338 and the Declaratory Judgment Act (28 U.S.C. § 2201). This court has supplemental subject matter jurisdiction over state law claims pursuant to 28 U. S. C. § 1367(a) in that the state law claims form part of the same case or controversy as the federal claims.

9.     Defendants are subject to the Court's jurisdiction because they have committed the acts complained of herein in this District, do business in this District and reside in this District.

10.     Defendants are subject to the jurisdiction of this Court pursuant to and in accordance with Rule 4 of the Federal Rules of Civil Procedure.

4462.001
1646263_2

11.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTUAL ALLEGATIONS

12.     Plaintiffs first met in high school while working at a popular fast food chain restaurant in Hemlock, Michigan.  The two developed an instant chemistry, and their funny and witty banter amused not only themselves but their co-workers as well.  The duo decided to start recording their conversations and to publish them on the Internet.

13.     On or about January 2012, Plaintiffs created their own channel on YouTube entitled "The Bible Reloaded" ("The Bible Reloaded").  The initial idea for The Bible Reloaded was to simply publish the everyday conversations between Plaintiffs for pure entertainment value.  The channel then developed into an atheist Bible series where the two read passages from the Bible and provided their commentary from an atheist point of view.  Approximately two years after starting the channel, Plaintiffs began publishing movie reviews, which have become the most popular and highest grossing videos on The Bible Reloaded.

14.     Since January 3, 2012, The Bible Reloaded series has been published to Plaintiffs' own channel, which has been hosted by YouTube, LLC, ("YouTube"), an independent web hosting service located in San Bruno, California, that specializes in providing video-sharing services to digital media creators.  The Bible Reloaded is available for viewing at **www.youtube.com/user/TheBibleReloaded**.

15.     Initially receiving a few thousand subscribers, The Bible Reloaded was quickly boosted to about 16,000 subscribers in its first year after receiving recognition from another popular YouTube content creator.  Thereafter, The Bible Reloaded exploded, hitting 60,000 subscribers in 2014, 100,000 subscribers in 2015, and currently reaching 142,000 subscribers.  Plaintiffs have become some of the most popular YouTube hosts, and The Bible Reloaded one of the most popular channels, in the religion-based content genre due to their unique dynamic and original, comedic

content. The channel now averages approximately about 1.16 million views per month, and this has afforded Plaintiffs a way to provide for their families by earning revenue primarily monetized by means of advertising on the videos.

16.     On April 8, 2016, Plaintiffs published a 41 minute, 51 second video of The Bible Reloaded on YouTube, entitled "Atheists Watch - A Matter of Faith" (the "First Video"). The First Video consists of a review and critique of a movie entitled "A Matter of Faith." During the course of the video, while providing comedy, commentary and critique of the movie, Plaintiffs show still shots of the movie and short clips of the film. Plaintiffs' commentary is focused primarily on the religious concept of evolution versus creationism.

17.     The First Video was an instant success and was viewed approximately 20,000 times on the first day it was published on YouTube.

18.     On or about April 20, 2016, Plaintiffs were notified by YouTube, LLC of a takedown notice submitted by CFG demanding that the First Video be removed on YouTube pursuant to Section 512 of the Digital Millennium Copyright Act ("DMCA") (the "First DMCA Notice"). The First DMCA Notice claims that the First Video contains unauthorized use of the copyrighted "A Matter of Faith" motion picture and, therefore, the First Video infringes the copyright to "A Matter of Faith." Defendants were later informed that the First DMCA Notice was submitted by Selvanayagam on behalf of CFG. A true and correct copy of the First DMCA Notice is attached hereto as **Exhibit A** and its contents are incorporated by reference herein.

19.     Upon information and belief, CFG is the film production company that created, produced and released, "A Matter of Faith". CFG is owned and operated by brothers, Rich Christiano ("Rich") and Dave Christiano ("Dave"). Besides "A Matter of Faith," CFG creates, produces and releases other religious-themed content, including theatrical feature films and websites promoting those films. Between 1988 and 2014, CFG released feature length films, including: "Crime of the Age"; "End of the Harvest"; "Time Changer"; and "A Matter of Faith."

4462.001
1646263_2

20.     Further, on or about April 20, 2016, in response to the First DMCA Notice, YouTube, LLC removed public access to Plaintiffs' First Video.  Therefore, users of YouTube and subscribers to The Bible Reloaded were no longer permitted to access and watch the First Video.

21.     The detrimental effects of the First DMCA Notice on Plaintiffs were realized immediately.  Aside from the fact that Plaintiffs were forced to expend extensive time and effort responding to the First DMCA Notice, the First Video was not publicly accessible for a period of six (6) days.   As a result, Plaintiffs were deprived of a significant amount of advertising revenue from performance of the First Video.

22.     Furthermore, due to the video not being accessible, Plaintiffs lost out on significant goodwill and publicity associated with the release of the First Video. During the first few days of the release of a video, YouTube videos commonly receive their most views, comments and shares on social media.   A successful launch of a video is key to its long-term performance.

23.     Additionally, during this period, YouTube prohibited Plaintiffs from uploading new videos longer than 15 minutes, affecting the majority of their videos and causing an estimated loss of approximately 120,000 views on YouTube.

24.     Because Plaintiffs were not allowed to upload videos longer than 15 minutes, they were also unable to participate in livestream fundraising events on the website www.patreon.com.

25.     The damages caused by Defendants' submission of the First DMCA Notice is irreparable and are still being suffered by Plaintiffs to this day.

26.     On or about April 21, 2016, Jake contacted CFG by means of the CFG's twitter account, @5and2pictures, through the **www.Twitter.com** website ("Twitter"). Jake informed CFG of the false nature of the First DMCA Notice and demanded that the First DMCA Notice be retracted.   Defendants failed to respond to this message and merely blocked Plaintiffs from subsequently contacting them through the Twitter

**COMPLAINT**

account.

27.    At the same time, Plaintiffs communicated through e-mail with Defendants regarding the First DMCA Notice.  Plaintiffs advised Defendants that use of the still shots and brief video clips of "A Matter of Faith" in the First Video was in a limited capacity and for the purposes of review, and such use of a copyrighted work should be protected under Fair Use as defined by 17 U.S.C. § 107.

28.    Defendants adamantly refused to retract the First DMCA Notice with YouTube without Plaintiffs' first agreeing to permanently delete the First Video so that it would never be seen again on YouTube. Plaintiffs refused to comply with this unreasonable demand and submitted a counter-notification to YouTube over the First DMCA Notice.

29.    On April 25, 2016, Plaintiffs published a 13 minute, 15 second video of The Bible Reloaded on YouTube entitled "Hey Scotty, Lawsuit Man!" (the "Second Video").  Due to the restrictions caused by the First DMCA Notice, Plaintiffs were forced to limit this video to less than 15 minutes.  In the Second Video Plaintiffs merely discussed what had happened with the First Video and the First DMCA Notice, their communications with Defendants, and Fair Use.  The Second Video **does not** contain any still shots or video from any of CFG's motion pictures.

30.    On April 25, 2016, following the release of the Second Video, Plaintiffs received an email from Dave praising the publicity that the First Video had brought to CFG's motion pictures and mentioning that "another person is doing [the shutdowns] for us."  This other person was later identified to be Selvanayagam.

31.    In subsequent emails on this same day, and in response to Hugo explaining to Dave the doctrine of Fair Use, Dave agreed "this all makes sense" and stated that he had asked Selvanayagam to revoke the First DMCA Notice.  Hugo also exchanged several emails with Selvanayagam on this same day concerning retraction of the First DMCA Notice.

32.    On April 26, 2016, Plaintiffs finally received notice from YouTube, LLC

4462.001
1646263_2

that the copyright claim against the First Video had been released by CFG.

33.     On April 27, 2016, Plaintiffs published a 36 minute, 45 second video of The Bible Reloaded on YouTube entitled "STRIKE: How We Got Our Groove Back" (the "Third Video").   In the Third Video Plaintiffs solely discussed what had happened most recently concerning the retraction of the First Video and First DMCA Notice, their communications with Defendants, and Fair Use.   The Third Video also **does not** contain any still shots or video from any of CFG's motion pictures.

34.     Between May 20, 2016 and June 24, 2016, Plaintiffs published three (3) additional episodes of The Bible Reloaded on YouTube offering criticism and commentary about different CFG films.

35.     On May 20, 2016, Plaintiffs published a 42 minute, 13 second video of The Bible Reloaded on YouTube entitled "Atheists Watch – Christiano Brother's 'Time Changer'" (the "Fourth Video").   The Fourth Video consists of a review and critique of a movie entitled "Time Changer."   During the course of the video, while providing comedy, commentary and critique of the movie, Plaintiffs show only still shots of the movie; the Fourth Video **does not** contain any video content from "Time Changer."

36.     On May 31, 2016, Plaintiffs published a 21 minute, 39 second video of The Bible Reloaded on YouTube entitled "Atheists Watch 'End of the Harvest'" (the "Fifth Video"). The Fifth Video consists of a review and critique of a movie entitled "End of the Harvest." During the course of the video, while providing comedy, commentary and critique of the movie, Plaintiffs show only still shots of the movie; the Fifth Video **does not** contain any video content from "End of the Harvest".

37.     On June 24, 2016, Plaintiffs published a 21 minute, 52 second video of The Bible Reloaded on YouTube, entitled "Atheists Watch – The Christiano Brothers 'Crime of the Age'" (the "Sixth Video").   The Sixth Video consists of a review and critique of a motion picture entitled "Crime of the Age." During the course of the video, while providing comedy, commentary and critique of the movie, Plaintiffs

8
**COMPLAINT**

show only still shots of the movie; the Sixth Video **does not** contain any video content from "Crime of the Age."

38.     In sum, the Fourth Video, the Fifth Video, and the Sixth Video consist solely of reviews and critiques of CFG's motion pictures.   These videos **do not** contain video clips from CFG's motion pictures and solely display non-moving still shots.

39.     Despite this, Defendants' attempts to silence Plaintiffs' critique of CFG's motion pictures was far from over.

40.     On August 15, 2016, Plaintiffs were again notified by YouTube, LLC of another round of DMCA takedown notices that were filed by Defendants. Defendants claimed that the Fourth Video, Fifth Video and Sixth Video infringed the copyrights for Defendant's motion pictures.   These claims are frivolous as these videos contain only still shots from CFG's motion pictures, and are thus protected by the Fair Use doctrine.

41.     Equally concerning, Plaintiffs were notified by YouTube, LLC that DMCA takedowns were also issued by Defendants against the Second Video and the Third Video.   In these videos, Plaintiffs only discussed the takedown of the First Video, their communications with Defendants, and Fair Use.   The Second Video and Third Video **do not** contain any still shots or video from any of CFG's motion pictures.

42.     On information and belief, Defendants knowingly and willfully falsely claimed in a DMCA takedown that the Second Video contained infringing use of the motion picture entitled "Second Glance."   This was an outright lie made in the DMCA takedown notice and represented to YouTube, LLC.   Not a single video clip or image of "Second Glance" was contained in the Second Video.   In fact, "Second Glance" was never even mentioned in the Second Video.

43.     On information and belief, Defendants knowingly, willfully, and fraudulently claimed in a DMCA takedown notice that the Third Video contained

**COMPLAINT**

4462.001
1646263_2

infringing use of the motion picture entitled "A Matter of Faith."  This was an outright lie made in the DMCA takedown notice and represented to YouTube, LLC. Not a single video clip or image of "A Matter of Faith" was contained in the Third Video. In fact, "A Matter of Faith" was never even mentioned in the Third Video.

44.     In sum, following the resolution of the First DMCA Notice, Defendants submitted a total of five (5) additional DMCA takedowns to YouTube, LLC claiming that CFG's motion pictures were infringed by (the "Five Subsequent DMCA Notices.") The statements contained in the Five Subsequent DMCA Notices are totally false.

45.     The Five Subsequent DMCA Notices were submitted frivolously, harassingly, and completely without merit.  In fact, YouTube explicitly acknowledged that use of CFG's motion pictures in the Second Video, the Third Video, the Fourth Video, the Fifth Video, and the Sixth Video, if any, fell under Fair Use and, as such, refused to remove the content.

46.     The Five Subsequent DMCA Notices accusing Plaintiffs of mass copyright infringement have unjustly interfered with Plaintiffs' ongoing business relations with YouTube to Plaintiffs' severe and continuing detriment.

47.     According to 17 U.S.C. § 512, a notification of claimed infringement must include "[a] statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed."

48.     Selvanayagam, as the signatory acting as agent for CFG, did in fact submit the First DMCA Notice and the Five Subsequent DMCA Notices, none of which comply with the aforementioned requirement, thus committing perjury as defined by 18 U.S.C. § 1621.  A true and correct copy of the Copyright Infringement Notification Confirmation in connection with the Five Subsequent DMCA Notices implicating Selvanayagam is attached hereto as **Exhibit B** and its contents are incorporated by reference herein.  Note, Plaintiffs do not have access to a Copyright

Infringement Notification Confirmation in connection with the First DMCA Notice as, at the time of that notice, YouTube, LLC's protocol did not include providing this information.

49.     Defendants' actions in filing the First DMCA Notice and Five Subsequent DMCA Notices constitute an egregious display of bad faith. Defendants clearly choose to selectively target unfavorable reviews of their films, such as Plaintiffs' videos, as evidenced by the blatant lack of enforcement resulting in extensive online availability of Defendants' films published by third parties – the exact conduct for which Defendants attempted to stop Plaintiffs from engaging.  It is obvious that Plaintiffs were unduly singled out by Defendants in a malicious attempt to stifle their creative liberties in favor of Defendants' own interests.   These unwarranted actions have caused Plaintiffs irreparable damages.

## FIRST CLAIM FOR RELIEF:

### DMCA MISREPRESENTATION

### (17 U.S.C. § 512(f))

50.     Plaintiffs repeat and re-allege the allegations in the preceding paragraphs of this Complaint.

51.     Upon information and belief, Defendants knew that the publications of the First Video, the Second Video, the Third Video, the Fourth Video, the Fifth Video, and the Sixth Video were not copyright infringements.

52.     In the First DMCA Notice, purportedly issued under the authority of 17 U.S.C. § 512, Defendants knowingly and materially misrepresented that the publication of the First Video was infringing when in fact it falls under the Fair Use exception as defined by 17 U.S.C. § 107.

53.     In the First DMCA Notice, purportedly issued under the authority of 17 U.S.C. § 512, Defendants knowingly and materially misrepresented that Plaintiffs could be liable under copyright law for publishing the First Video.

54.     Plaintiffs have been injured by such misrepresentation as YouTube, their

**COMPLAINT**

4462.001
1646263_2

hosting service provider, relied upon the misrepresentation to terminate certain features of their service, including publicly displaying the First Video and disallowing the upload of additional videos longer than 15 minutes.

55.     In the Five Subsequent DMCA Notices, purportedly issued under the authority of 17 U.S.C. § 512, Defendants knowingly and materially misrepresented that the publications of the Second Video, the Third Video, the Fourth Video, the Fifth Video, and the Sixth Video were infringing when in fact they fell under the Fair Use exception as defined by 17 U.S.C. § 107.

56.     The Second Video and the Third Video did not contain a single still shot or video clip from any of CFG's motion pictures.

57.     In the Five Subsequent DMCA Notices, purportedly issued under the authority of 17 U.S.C. § 512, Defendants knowingly and materially misrepresented that Plaintiffs could be liable under copyright law for publishing the Second Video, the Third Video, the Fourth Video, the Fifth Video, and the Sixth Video.

58.     Plaintiffs have been injured by such activity in that they are now forced to engage in self-censorship in order to avoid further ramifications of DMCA abuse by Defendants.

59.     Plaintiffs are entitled to damages, including costs and attorneys' fees pursuant to 17 U.S.C. § 512(f)

60.     Plaintiffs are also entitled to punitive damages pursuant to Cal. Civ. Code § 3294(a).

61.     In addition, as a result of Defendants' activities, Plaintiffs have suffered, and will continue to suffer, irreparable injury not fully compensable in monetary damages, and are therefore entitled to an injunction enjoining Defendants from engaging in their wrongful activities.

## SECOND CLAIM FOR RELIEF:

### UNFAIR COMPETITION

### (Cal. Bus. & Prof. Code § 17200)

4462.001
1646263_2

62.     Plaintiffs repeat and re-allege the allegations in the preceding paragraphs of this Complaint.

63.     This cause of action is brought pursuant to Unfair Competition Law at Business & Professions Code § 17200 *et seq*. Defendants' conduct as described herein constitutes unfair, unlawful and/or fraudulent business practices within the meaning of Business & Professions Code § 17200.

64.     In flagrant abuse of the takedown provisions of the DMCA and in violation of 17 U.S.C. 512(f), Defendants knowingly, fraudulently, and frivolously misrepresented that the actions of Plaintiffs in publishing their videos violated Defendants' copyrights in an effort to stifle Plaintiffs' right to free speech.

65.     Defendants' intentional misrepresentations that Plaintiffs' videos infringed on Defendant's copyrights, in violation of 17 U.S.C. 512(f) constitute "…unlawful, unfair or fraudulent business act[s]" in the language of Business and Professions Code § 17200.

66.     Defendants' intentional interference with Plaintiff's contractual relations with YouTube constitute "…unlawful, unfair or fraudulent business act[s]" in the language of Business and Professions Code § 17200.

67.     As a result of Defendants' violations of Business & Professions Code § 17200, Plaintiffs have suffered loss of revenue, which would have been realized if not for the Defendants' actions.

68.     Plaintiffs have suffered, and will continue to suffer, irreparable injury not fully compensable in monetary damages, and are therefore entitled to injunctive relief under California Business and Professions Code § 17200.

69.     Plaintiffs are also entitled to punitive damages pursuant to Cal. Civ. Code § 3294(a).

4462.001
1646263_2

### THIRD CLAIM FOR RELIEF:

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

### (Common Law)

70.     Plaintiffs repeat and re-allege the allegations in the preceding paragraphs of this Complaint.

71.     Plaintiffs contracted with YouTube for hosting services to publish The Bible Reloaded.

72.     Defendants' First DMCA Notice and Five Subsequent DMCA Notices admit knowledge of the contractual relationship between YouTube and Plaintiffs.

73.     Defendants' First DMCA Notice and Five Subsequent DMCA Notices were intentionally designed to cause YouTube to terminate, interrupt, or otherwise limit Plaintiffs' video hosting service by misrepresenting that the actions of Plaintiffs in publishing their videos violated Defendants' copyrights.

74.     Defendants' First DMCA Notice did, in fact, intentionally disrupt Plaintiffs' relations with YouTube, causing YouTube to revoke access to certain service features, including public access to the First Video, and the ability to post additional videos of longer than 15 minutes.  Due to the threats by Defendants, Plaintiffs have been made fearful for the continuity of their hosting service from YouTube.

75.     As a result, Plaintiffs have suffered loss of revenue, which would have been realized if not for the disruption in service. Additionally, in order to assure that their video hosting services are not disconnected, Plaintiffs have been forced to limit their expression in ways that are contrary to the mission of The Bible Reloaded - to support free and open commentary and criticism of Christian themed content.

76.     Plaintiffs are entitled to their actual damages as well as punitive damages pursuant to Cal. Civ. Code § 3294(a).

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for judgment for themselves and all others

4462.001
1646263_2

similarly situated as follows:

1. Actual damages pursuant to the Digital Millennium Copyright Act, 17 U.S.C. 512(f);

2. A declaratory judgment that, as it relates to the Defendants, publication and hosting of the First Video, the Second Video, the Third Video, the Fourth Video, the Fifth Video, and the Sixth Video is lawful;

3. Injunctive relief restraining the Defendants, their agents, servants, employees, successors and assigns, and all others in concert and private with them, from bringing any lawsuit, submitting any DMCA takedown notices, or issuing threats against the Plaintiffs or any other person or entity associated with Plaintiffs for copyright infringement in connection with publishing or hosting the First Video, the Second Video, the Third Video, the Fourth Video, the Fifth Video, and/or the Sixth Video;

4. Damages for intentional interference with contractual relations according to proof;

5. Punitive damages for Defendants' malicious and fraudulent abuse of 17 U.S.C. 512(c) in violation of 17 U.S.C. 512(f), pursuant to Cal. Civ. Code § 3294(a).

6. Punitive damages for Defendants' malicious and fraudulent intentional interference with contractual relations, pursuant to Cal. Civ. Code § 3294(a).

7. Punitive damages for Defendants' unlawful, unfair, or fraudulent business acts in violation of Business and Professions Code § 17200, pursuant to Cal. Civ. Code § 3294(a).

8. Attorneys' fees pursuant to 17 U.S.C. § 505, 17 U.S.C. §512(f), other portions of the Copyright Act, Cal. Code Civ. Proc. § 1021.5, or as otherwise allowed by law;

9. Plaintiffs' costs of suit pursuant to 17 U.S.C. §512(f);

10. Plaintiff's costs and disbursements within; and

11. Such other and further relief as the Court shall find just and proper.

**COMPLAINT**

4462.001
1646263_2

Dated:  October 3, 2016                    BRUTZKUS GUBNER

                                           By:        /s/ Deborah E. Greaves

                                           Attorneys for Plaintiffs Jacob Daniel Fleet and
                                           Jacob Tyler Arthur Spatz d/b/a
                                           The Bible Reloaded

## DEMAND FOR JURY TRIAL

Plaintiffs Jacob Daniel Fleet and Jacob Tyler Arthur Spatz d/b/a The Bible Reloaded hereby demand a trial by jury for all issues so triable in this action.

Dated:  October 3, 2016                    BRUTZKUS GUBNER

                                           By:        /s/ Deborah E. Greaves

                                           Attorneys for Plaintiffs Jacob Daniel Fleet and
                                           Jacob Tyler Arthur Spatz d/b/a
                                           The Bible Reloaded

4462.001
1646263_2

# EXHIBIT A

# EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Hi The Bible Reloaded:**

Due to a copyright takedown notice that we received, we had to take down your video from YouTube:

Video title: Atheists Watch - A Matter of Faith
Video url: http://www.youtube.com/watch?v=C7yxa0mpj2k
Takedown issued by: Christiano Film Group, Inc

This means that your video can no longer be played on YouTube, and you may have lost access to some features of YouTube.

**You received a copyright strike**

You now have **1 copyright strike**. Getting multiple copyright strikes can lead to the termination of your account and the removal of all your videos. To avoid that from happening, please don't upload videos that contain copyrighted content that you aren't allowed to use.

**Why this can happen**

- One or more of your videos contained copyrighted content.
- Copyright owners can choose to take down videos that contain their content.

**View details**

**What to do next**

- If you believe you're not at fault, you can try to appeal this takedown by submitting a counter notification. Keep in mind that there may be severe legal consequences for submitting a counter notification with false information.
- You can also contact the party that removed your video and ask them to retract their takedown.

Help center • Email options

©2016 YouTube, LLC 901 Cherry Ave, San Bruno, CA 94066

17

**COMPLAINT**

# EXHIBIT B

1

2

**EXHIBIT B**

3

Hello,

We received the copyright infringement notification below regarding your video(s). We believe your content is protected by fair use, fair dealing, or a similar exception to copyright protection. We are writing to let you know we do NOT plan to remove your video(s) at this time. You have control over the availability of videos on your channel, including the ability to delete them if you choose.

http://www.youtube.com/watch?v=1fk-X9kao2k
http://www.youtube.com/watch?v=aQ5io12jvh0JU
http://www.youtube.com/watch?v=oT_iermbqbQ
http://www.youtube.com/watch?v=I8HTH2o5ycQ
http://www.youtube.com/watch?v=NfNcYhthOr4

4

Please be advised it is possible the copyright owner will approach you directly to request removal or take other action.
This email is not intended as legal advice. If you are interested in more information regarding this matter, you may wish to consult a qualified attorney.
[BEGIN COPY OF NOTICE]

5

6

Hi there, here is a new copyright complaint submission:

7

## Copyright Infringement Notification Confirmation

8

9

10

Copyright Owner Name (Company Name if applicable): Christiano Film Group Inc

11

12

Your Full Legal Name (Aliases, usernames or initials not accepted): Jeremy Rizal Selvanayagam

13

Your Title or Job Position (What is your authority to make this complaint?): Social Media Rep

14

Address:

15

P.O. BOX 553

16

LAKE FOREST, CA 92609-0553

17

US

18

Username: Jeremy Rizal S

19

Email Address: lifestyles@gmail.com

20

Phone: 949-215-9121

21

22

23

24

25

26

27

28

18

**COMPLAINT**

4462.001
1646263_2

1

2

URL of allegedly infringing video to be removed: http://www.youtube.
com/watch?v=NlNcYhthOr4
Describe the work allegedly infringed: My company, organization or client's
video (not from YouTube)

3

4

- Title of original video: Second Glance
- Link to video:
- Where does the content appear? Entire video

5

URL of allegedly infringing video to be removed: http://www.youtube.
com/watch?v=I8H1H2o5vcQ
Describe the work allegedly infringed: My company, organization or client's
video (not from YouTube)

6

7

- Title of original video: A Matter of Faith
- Link to video:
- Where does the content appear? Entire video

8

URL of allegedly infringing video to be removed: http://www.youtube.
com/watch?v=1fk-X0kaoZk
Describe the work allegedly infringed: My company, organization or client's
video (not from YouTube)

9

10

- Title of original video: Time Changer
- Link to video:
- Where does the content appear? Entire video

11

URL of allegedly infringing video to be removed: http://www.youtube.
com/watch?v=dT_ierm5gbQ
Describe the work allegedly infringed: My company, organization or client's
video (not from YouTube)

12

13

- Title of original video: End of the Harvest
- Link to video:
- Where does the content appear? Entire video

14

URL of allegedly infringing video to be removed: http://www.youtube.
com/watch?v=aQ5o12wh0JU
Describe the work allegedly infringed: My company, organization or client's
video (not from YouTube)

15

16

- Title of original video: Crime of the Age
- Link to video:
- Where does the content appear? Entire video

17

Country where copyright applies: US
I state UNDER PENALTY OF PERJURY that:

18

- I am the owner, or an agent authorized to act on behalf of the owner of an
  exclusive right that is allegedly infringed.
- I have a good faith belief that the use of the material in the manner
  complained of is not authorized by the copyright owner, its agent, or the law;
  and
- This notification is accurate.
- I acknowledge that under Section 512(f) of the DMCA any person who
  knowingly materially misrepresents that material or activity is infringing may
  be subject to liability for damages.
- I understand that abuse of this tool will result in termination of my YouTube
  account.

19

20

21

22

Authorized Signature: Jeremy Rizal Selvanayagam

23

24

25

26

27

28

19

**COMPLAINT**